Gheen, J.
delivered the opinion of the court.
The' plaintiff in error was indicted in the Jackson Circuit Court for assaulting and shooting William Cul-lum, with intent to kill and murder in the first degree. The jury found a verdict of guilty, and the defendant was sentenced to confinement in the Penitentiary for three years. A motion was made for a new trial and refused, and the defendant appealed in error to this court.
It appeared, from the evidence, that in April, 1847, the defendant was a witness in a cause then tried before the Circuit Court, and the prosecutor was one of the attornies in the cause, and that in his address to the jury, he commented on the evidence of the defendant in a style of severe censure, and on the manner in which the defendant had acted towards the person against whom he testified, and who was defended by Cullum. The defendant, because greatly irritated, and in the court house next morning, *456 attempted to engage the prosecutor in combat, but was prevented by the interference of others. He then became very abusive, and threatened that he would have his revenge ; that he would make the prosecutor bite the dust, &c.
At the next term of the court, the defendant sought to get the prosecutor into a grocery to drink with him, and was so earnest and importunate, that the prosecutor apprehended some evil purpose existed and declined going.
At the subsequent term of the court, nothing of an unfriendly character occurred. On the 16th May, 1848, the prosecutor was at Gainsborough on business, when he was called into a grocery by the defendant, who suggested that another man wished to give him a fee as a lawyer. When the prosecutor was at the grocery, the defendant asked him to drink, and being earnestly pressed, he did drink — the defendant at the same time drinking, and as he did so, touched the prosecutor’s glass with his own. He then asked the prosecutor to loan him money, and being asked how much he wanted, said, less than fifty or an hundred dollars would do him no good. The prosecutor said that was more than he had. Whereupon some conversation occurred in reference to the former difficulty, when the defendant, with an oath, pronounced the prosecutor a liar, and struck him several severe blows on the head with a pound weight, which he had previously procured. The parties were separated: the prosecutor being in feeble health, and having no means of defence but an umbrella was much worsted, and severely wounded on the head. After the prosecutor’s head was dressed, he passed the grocery, where the defendant still was, who cursed him and told him he was not done with him; that he intended to kill him, and would have blown *457 bis heart out once before, if another person had not stepped between them.
Soon after this the prosecutor went to dinner at the tavern, and while he was- there, the defendant got his gun, and commenced parading the street and cursing and making threats. Several persons went to where he was, and one of them spoke to him about his gun — told him it was an old snapping gun, and was worth nothing, and took it out of his hands and fired it off. The defendant then went home briskly, and reloaded his gun, and cursing and threatening as before. When he came opposite to the tavern where the prosecutor was inside and armed the prosecutor putting his gun against a pane of glass of the window, broke it out, and then placed it against another pane, breaking that also. The defendant hearing the glass jingle, turned quickly and fired upon the prosecutor — part of the shot taking effect in his arm. The prosecutor immediately after fired, but without effect. The judge charged the jury, in substance, that in order to convict the defendant, the assault and battery must be shown to have been committed wilfully, deliberately, maliciously, and premeditatedly. “The proof must satisfy the mind, that there was a concurring will, deliberation, malice, and premeditation, on the part of the defendant to take the life of the prosecutor, at the time the assault and battery was made. If the assault was made under the influence of provocation and passion before the passion had time to subside, (if the provocation was a sufficient legal one) it would not be such an assault as is laid in the indictment, and the defendant should be acquitted.”'
“ If the defendant, in passing along the street, with his gun, having no design upon the life of the prosecutor, saw him with a gun pointed at him, and he fired his gun *458 to defend himself, from the assault of the prosecutor, and although at the time he fired he may have intended to kill, yet if the design to kill was suddenly formed, on seeing the gun of the prosecutor pointed at him, and under the apprehension of danger he shot the prosecutor, he would not be guilty of an assault with intent to commit murder in the first degree. But if the defendant was in search of the prosecutor, with a loaded gun, with a wilful, deliberate, premeditated purpose and design to take his life, and the prosecutor being also armed with a gun, under the apprehension of danger from the defendant, and the defendant had then fired his gun at the prosecutor in pursuance of his preconceived and deliberate purpose to kill, then he would be guilty of an assault with intent to murder in the first degree. The jury must be satisfied of the guilt of the defendant, and if a reasonable doubt exists in their minds of his guilt they must acquit him.”
This statement of the law of this case by his Honor, the circuit judge, in his instruction to the jury, is strictly correct in all its facts, and it so fully covers all the questions of law debated at the bar, that any further discussion on our part is unnecessary.
Counsel for the defendant have insisted, that the instruction of the Circuit Court to the jury is too general, and that in order to a right understanding of the case, he should have defined to them murder in the second degree.
We do not think any such instruction called for in the -case. The judge told them that if the assault was made under the influence of passion, or if made to defend himself against the gun of the prosecutor, he, the defendant, having no intention to enter the house, nor design upon the life of the prosecutor, they should not find him guilty. *459 Upon tbis charge, if tbe jury had understood the facts as the prisoner’s counsel do, they must have acquitted the defendant.
We think the charge of the court is just such an one as circuit judges ought always to deliver in such cases. They are not ealled upon to deliver a lecture upon criminal law, but to state the law of the particular case. This we think his Honor did with admirable clearness and precision.
2. It is next insisted that the proof does not make out a case of guilt under this indictment. If, as his Honor told the jury, the defendant was in search of the prosecutor with a loaded gun with a deliberate purpose to take his life, and attracted by the prosecutor breaking the glass, he saw the prosecutor’s gun presented towards him, and instantly fired his own gun in pursuance of his original preconceived purpose to kill, then he is guilty of the offence charged in the indictment. Upon this hypothesis the jury have found the defendant guilty, and we think rightly. The facts occurring at the grocery establish, beyond a doubt, that the defendant invited the prosecutor there, that he might get into a fight under circumstances that would seem to mitigate the criminality which might attach to any. fatal result. He unquestionably provided himself secretly with the pound weight, with a view to use it on the prosecutor. This was done before the quarrel commenced, and establishes beyond doubt, that the quarrel was brought on by him, in view of the former difficulty between the parties, and with a view to revenge himself’ in pursuance of his previous malice. And shortly after the fight in which he had used the pound weight endangering the prosecutor’s life, the defendant repeated his threat to kill the prosecutor, and said he would have *460 accomplished that object on a former occasion, but for another person stepping between them. He then got his loaded gun and continued cursing and repeating threats; when it was taken out of his hands and fired, he quickly reloaded it and returned in front of the dwelling in which he knew the defendant was; when he was attracted by the noise of the breaking glass, he quickly turned and fired his gun. That this was done in pursuance of his previous malice and purpose to kill, we do not doubt, and, therefore, we think the verdict of the jury was justified by the proof in the cause.
Affirm the judgment.